**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RONALD ADAMS, | 2:07-cv-00777-RAM |
| Plaintiff, | |
| vs. | **MEMORANDUM DECISION AND ORDER** |
| C. GIBSON, et al., | |
| Defendants. | |

Before the court is Plaintiff's Motion for Partial Summary Judgment. (Doc. #39.)[1] Defendants have opposed. (Doc. #42.) Plaintiff did not reply. Also before the court is Defendants' Motion for Summary Judgment. (Doc. #47.) Plaintiff opposed (Doc. #66) and Defendants replied (Doc. #68). Having considered the papers and the arguments presented therein, and with good cause appearing, the court denies Plaintiff's Motion for Partial Summary Judgment and grants Defendants' Motion for Summary Judgment.

## I. BACKGROUND

At all relevant times, Plaintiff Ronald Adams (Plaintiff) was in custody of the California Department of Corrections and Rehabilitation (CDCR) as an inmate at California State Prison, Sacramento (CSP-Sac). (Pl.'s Mot. for Part. Sum. J. (Doc. # 39) Adams Decl. ¶ 2.)[2] Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983. Defendants are various CDCR

---

[1] Refers to the court's docket number.

[2] Unless otherwise indicated, the facts are taken primarily from the motions for summary judgment, opposition and reply documents, and exhibits and declarations filed in support.

administrators and employees. Plaintiff claims that Defendants violated the Eighth Amendment by subjecting him to conditions of confinement that amount to cruel and unusual punishment.

CSP-Sac is a Level IV prison with high security where inmates are confined to their cells for twenty-four hours a day, with exceptions that include yard time, showers, appointments, or the pick-up of canteen items. The prison provides mental health care to prisoners through the Mental Health Services Delivery System. Inmates are classified as: (1) Enhanced Outpatient Program inmates requiring high levels of mental health treatment that cannot function in the prison's general population; or (2) Correctional Clinical Case Management System Inmates who can function in the prison's general population but require psychotropic medications. Plaintiff is in the second category of inmates.

CSP-Sac has a heat alert program (Heat Alert), implemented pursuant to the *Coleman* class action, that requires all inmates taking pre-designated medication to stay in their cells during periods when the outdoor temperature has reached or exceeds ninety degrees because the medications have the known side effect of disrupting the body's ability to effectively regulate body temperature. If outside temperatures reach or exceed ninety degrees, inmates that are designated as part of the Heat Alert face the risk of becoming disoriented, losing consciousness, and in some instances, death. Plaintiff claims that due to the activation of a Heat Alert he was confined to his cell and was deprived of his out-of-cell activities including outdoor exercise or day room access, law library access, canteen access, and access to his personal packages for a period of ten to twelve days in July 2006[3], in violation of his Eighth Amendment rights.[4]

---

[3] There is some disparity in the number of days Plaintiff claims he was deprived out-of-cell activities. Plaintiff's Motion for Partial Summary Judgment claims the deprivation occurred over a period of twelve days (Doc. # 39 Adams. Decl. ¶ 2) while he testified in deposition that it was for a period of ten days (Doc. # 47-4 18:5-6).

[4] In addition to the Eighth Amendment violations, Plaintiff's original complaint alleged violations of the Equal Protection Clause and the Due Process Clause. To the extent Plaintiff seeks summary judgment as to these claims, the motion is denied as the court previously dismissed these claims. (*See* Doc. # 16 and Doc. # 18.)

## II. LEGAL STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (citing Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.*

In determining summary judgment, a court applies a burden shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.' In such a case, the moving party has the initial burden of establishing

3

the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(citation omitted). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not

significantly probative, summary judgment may be granted. *Id.* at 249-50, 255 (citations omitted).

### III.  DISCUSSION

**A.     Eighth Amendment**

The Eighth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of "cruel and unusual punishment" on those convicted of crimes. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991) (citations omitted). Under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison conditions may be, and often are, restrictive and harsh, prison officials "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)(quoting *Hudson v. Palmer*, 486 U.S. 517, 526-27 (1984)) (citations omitted).

In challenging prison conditions, an inmate must show that prison officials acted with deliberate indifference to a substantial risk of harm. *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998)(citing *Farmer*, 511 U.S. at 835). The deliberate indifference standard consists of an objective and subjective component. *Farmer*, 511 U.S. at 834. First, "the deprivation alleged must be, objectively, sufficiently serious." *Id.* (citations omitted). The act or omission of a prison official must "result in the denial of the minimal civilized measure of life's necessities." *Id.* (citations omitted). Second, a prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837. "Mere negligence is not sufficient to establish liability." *Frost*, 152 F.3d at 1128 (citing *Farmer*, 511 U.S. at 835). Prison officials may avoid liability by: (1) proving they were unaware of the risk, or (2) proving they "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

/ / /

/ / /

### 1.     **Outdoor Exercise/Day Room Access**

Plaintiff alleges that the conditions imposed by Defendants constitute cruel and unusual punishment because he was denied outdoor exercise or day room access for ten to twelve days as a result of the activation of a Heat Alert in July 2006. (Doc. # 39 Adams Decl. ¶¶ 1- 2.) Defendants claim that the deprivation of outdoor exercise was not sufficiently serious so as to rise to the level of a constitutional deprivation. (Doc. # 47-1 5-6.)

"Exercise has been determined to be one of the basic human necessities protected by the Eighth Amendment," *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993), and a long-term deprivation of outdoor exercise for inmates is unconstitutional. *Id.* at 1458 ("[T]his circuit has determined the long-term denial of *outside* exercise is unconstitutional.")(emphasis in original); s*ee also Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979) ("There is substantial agreement among the cases in this area that some form of regular outdoor exercise is extremely important to the psychological and physical well being of the inmates."); *Toussaint v. Yockey*, 722 F.2d 1490, 1493 (9th Cir. 1984) (holding that the district court did not err in concluding that the denial of outdoor exercise to inmates assigned to administrative segregation for over one year raised a "substantial constitutional question"). "The circumstances, nature, and duration of a deprivation of [ ] necessities must be considered in determining whether a constitutional violation has occurred." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

While the Ninth Circuit has found that exercise "is one of the basic human necessities protected by the Eighth Amendment," *LeMaire*, 12 F.3d at 1457, and that a long term deprivation is unconstitutional, *id.* at 1458, it has also held that "a temporary denial of outdoor exercise with no medical effect is not a substantial deprivation." *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997). In *May*, the Ninth Circuit affirmed summary judgment finding that the temporary denial of outdoor exercise for a period of twenty-one days was insufficient to establish an Eighth Amendment violation. *May*, 109 F.3d at 565 (quoting *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993)). A more lengthy deprivation, however, may violate the Eighth Amendment. In *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000), for example, the court

6

1  found that six and one-half weeks deprivation of all access to outdoor exercise was sufficient
2  to satisfy the Eighth Amendment's objective requirements. *Id.* at 1133, fn. 15. Likewise, in
3  *Keenan v. Hall*, 83 F.3d 1083 (9th Cir. 1996), *as amended,* 135 F.3d 1318, the court found that
4  a triable issue of fact existed as to whether a six month deprivation of outdoor exercise violated
5  the Eighth Amendment. *Id.* at 1089.

6        In light of the undisputed fact that Plaintiff was only temporarily deprived of outdoor
7  exercise for a period of ten to twelve days as a result of the activation of a Heat Alert and because
8  Plaintiff failed to present evidence of any medical effect of the deprivation, the court finds that
9  Defendants have satisfied the objective prong of the Eighth Amendment deliberate indifference
10 standard as a matter of law.

11       With respect to the subjective element, the court finds no evidence to support Plaintiff's
12 claim that the period without outdoor exercise, which began as a result of the activation of a
13 Heat Alert, was the result of Defendants' "deliberate indifference." Instead, the evidence before
14 the court shows that inmates subject to the Heat Alert program must return to their cells when
15 outside temperatures reach or exceed ninety degrees because they can become disoriented, lose
16 consciousness, and in some circumstances die. (Doc. #47-3 ¶ 2-6, 9.) Defendants reasonably
17 believed the Heat Alert program was put in place to protect Heat Alert inmates' health and safety
18 during high outdoor temperatures by removing them from that environment. *(*Doc. #47-5 -
19 47-9.)

20       Moreover, during their employment with CDCR, Defendants did not personally initiate
21 a Heat Alert nor did they personally restrict inmates to their cells as a result of a Heat Alert,
22 including Plaintiff. (Doc. #47-5 - 47-9.) Defendants Malfi, Gibson, and Tennison's only
23 involvement with Plaintiff was the review of Plaintiff's grievance and denial of his appeal.
24 (Doc. #47-5 ¶ 4, Doc. #47-6 ¶ 4, and Doc. #47-7 ¶ 4.) In reviewing Plaintiff's complaints, these
25 Defendants believed that the prison acted properly in restricting Plaintiff's outdoor activity for
26 a temporary period of time when outdoor temperature dictated to protect inmate health and
27 safety. (Doc. #47-5 ¶ 5, 47-6 ¶ 5, 47-7 ¶ 5.) Defendants Kernan and Walker, the Undersecretary
28

1  of Operations for CDCR and current Warden of CSP-Sac, respectively, were not involved with
2  Plaintiff's grievance and had no knowledge of Plaintiff's complaints (or those of any other
3  inmates) regarding the Heat Alert program. (Doc. #47-8 ¶ 4, Doc. #47-9 ¶ 4.)

4      This matter is replete with evidence revealing that the restrictions on out-of-cell activity
5  were instituted for the primary purpose of protecting the health and safety of Plaintiff and
6  similarly situated inmates. (*See* Doc. #47-3, 47-5 - 47-9.) Plaintiff has not presented evidence
7  to refute Defendants' explanations as to the circumstances and motivations underlying the Heat
8  Alert program.

9      Determinations such as how long denial of outdoor exercise is necessary "are delicate
10 ones, and those charged with them must be given reasonable leeway." *Hayward v. Procunier*,
11 629 F.2d 599, 603 (9th Cir. 1980); *see also Farmer*, 511 U.S. at 845 (quoting *Spain v.
12 Procunier*, 600 F.2d 189, 193 (9th Cir. 1979)); *Bell v.Wolfish*, 441 U.S. 520, 547 ("[T]he
13 problems that arise in the day-to-day operation of a corrections facility are not susceptible of
14 easy solutions. Prison administrators therefore should be accorded wide-ranging deference in
15 the adoption and execution of policies and practices that in their judgment are needed to
16 preserve internal order and discipline and maintain institutional security."). Moreover, the
17 Ninth Circuit recently noted that its precedent does not hold that "a prisoner's right to outdoor
18 exercise is absolute and indefeasible, or that it trumps all other considerations." *Norwood v.
19 Vance*, 591 F.3d 1062,1068 (9th Cir. 2010), *petition for cert. filed*, 78 USLW 3612 (Apr. 07,
20 2010)(No. 09-1215). It is well established that prisons also have a duty to keep inmates safe.
21 *Id.* at 1069 (citing *Farmer*, 511 U.S. at 832-33; *LeMaire*, 12 F.3d at 1462).

22     Defendants have demonstrated that the out-of-cell activity restriction was imposed as
23 a result of a Heat Alert program to protect Plaintiff's health and safety. There is no evidence
24 to suggest that the restrictions existed any longer than necessary. Plaintiff has not come forward
25 with any evidence to counter Defendants' overwhelming evidence that the period of restriction
26 on out-of-cell activities was a necessary reaction to the excessive temperatures. There is simply

8

no evidence before the court which supports Plaintiff's claim that Defendants' actions were the product of any "deliberate indifference."

Therefore, in viewing the facts in the light most favorable to Plaintiff, the court finds that Plaintiff has failed to raise a genuine issue of material fact as to whether he faced an objectively sufficient serious risk of harm and has failed to show that Defendants acted with deliberate indifference. Rather, the uncontroverted evidence establishes that the restriction on out-of-cell activities was a reasonable and necessary response to the excessive heat given Plaintiff's inmate status.

### 2. Law Library Access

Plaintiff claims he was denied access to the law library for ten to twelve days while a Heat Alert was in effect in July 2006. (Doc. #39 Adams Decl. ¶¶ 1- 2.)

Although an inmate has a constitutionally protected right of meaningful access to the courts, no freestanding constitutional right to law library access exists for inmates. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977); *see also Lewis v. Casey*, 518 U.S. 343, 350-51 (1996). Rather, law library access provides one means of ensuring the constitutional right of access to the courts. *Lewis*, 518 U.S. at 351. When claiming the right to access the courts has been violated due to inadequate library access, an inmate must show: (1) access was so limited as to be unreasonable, and (2) the inadequate access caused actual injury. *Vandelft v. Moses*, 31 F.3d 794, 797 (9th Cir. 1994).

Even though Plaintiff claims that this deprivation violates his constitutional rights, he fails to present evidence that he suffered any actual injury, and therefore the court finds that his claim fails.

### 3. Access to Personal Packages

Plaintiff claims he was denied access to personal packages for ten to twelve days while a Heat Alert was in effect in July 2006. (Doc. #39 Adams Decl. ¶¶ 1-2.)

Interpreting the facts presented in the light most favorable to Plaintiff, there is no evidence that any action taken by Defendants constitutes deliberate indifference-that

9

1 Defendants knew of and disregarded an excessive risk to Plaintiff's health or safety-in
2 connection with the alleged denial of access to personal packages. Plaintiff has not shown that
3 the denial of access to personal packages for ten to twelve days prevented him from receiving
4 adequate food, clothing, shelter, medical care or reasonably safe confinement. Therefore, the
5 court finds that Plaintiff's claim that Defendants' violated his Eighth Amendment rights by
6 temporarily denying access to personal packages fails.

7 Even construing this claim as a First Amendment violation, Plaintiff's claim fails. It is
8 well settled that the First Amendment protects the flow of information to prisoners, and any
9 limitation must reasonably relate to a legitimate penological interest. *See Turner v. Safely*,
10 482 U.S. 78, 87 (1987); *see also Thornburgh v. Abbott*, 490 U.S. 401, 407-08 (1989). The Ninth
11 Circuit has previously found that temporary delay in delivery of mail does not violate an
12 inmate's First Amendment rights. *Crofton v. Roe*, 170 F.3d 957, 961 (9th Cir. 1999) (citing
13 *Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir. 1987) (emphasizing that "merely alleging
14 an isolated delay or some other relatively short-term, non content-based disruption in delivery
15 of inmate reading materials will not support...a cause of action grounded upon First
16 Amendment.")).

17 Under the First Amendment, Plaintiff has not presented a shred of evidence that any
18 delay Plaintiff's receipt of personal packages for anything other than a legitimate penological
19 interest- Plaintiff's health and safety. Plaintiff also fails to present evidence of a connection
20 between these Defendants and any alleged delay in access to personal packages. The court finds
21 no constitutional violation in the alleged temporary denial of access to personal packages.
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27
28

### 4.     Access to Canteen

Plaintiff presents no evidence that his alleged denial of access to the canteen for a period of ten to twelve days during the summer of 2006 was in deliberate disregard of an excessive risk to Plaintiff's health or safety. Plaintiff did not present evidence that the denial of canteen access prevented him from receiving adequate food, clothing, shelter, medical care or reasonably safe confinement. Although the deprivation may have been inconvenient, it is not objectively, sufficiently serious under the Eighth Amendment.

Even if the court were to construe this as a due process claim, Plaintiff has failed to present evidence that access to the prison canteen implicates a liberty or property interest or that the denial resulted in an atypical and significant hardship. *See Wolff v. McDonnell*, 418 U.S. 539, 564-571 (1974); *Sandin v. Connor*, 515 U.S. 472, 484 (1995).

Simply stated, Plaintiff's mere allegation that he was deprived of canteen access for ten to twelve days, unsupported by any evidence, does not rise to the level of a constitutional violation, and, in any event, fails to link any individual defendant to his claims.

### B.     Qualified Immunity

Because the court has found no violation of Plaintiff's constitutional rights, the court need not reach any issues regarding qualified immunity. *See County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all.").

### IV.  CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. #39) is **DENIED** and Defendants' Motion for Summary Judgment (Doc. #47) is **GRANTED**.

**IT IS FURTHER ORDERED** that the following motions are **DENIED** as moot:

- Plaintiff's Motion for Temporary Restraining Order (Doc. #37);
- Plaintiff's Motion for Temporary Restraining Order (Doc. #70); and

11

- Plaintiff's Motion for Temporary Restraining Order (Doc. #82).

**LET JUDGMENT ENTER ACCORDINGLY.**

DATED: November 16, 2010.

_____
UNITED STATES MAGISTRATE JUDGE